# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| CHARLES L. LETT, SR. | ) | Civil Action No. 08-00442-CB-M |
| Debtor/Appellee, | ) | |

## OPINION and ORDER

This matter comes before the Court on remand from the United States Court of Appeals for the Eleventh Circuit with instructions to adjudicate the merits of one of the claims appellant raised in his bankruptcy appeal. This Court has reviewed that claim based on the record and on the briefs previously filed by the parties. Upon careful consideration of the issues raised, the Court concludes that the Bankruptcy Court erred in confirming the Debtor's Chapter 11 Plan because that Plan violated the absolute priority rule.

**Procedural Background**

Debtor/appellee Charles Lett filed a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Alabama on March 26, 2004. Lett's reorganization plan was ultimately approved on February 12, 2008, but his largest creditor, the Alabama Department of Economic and Community Affairs (ADECA), appealed the confirmation order. Ball Healthcare—Dallas, L.L.C. (Ball), which holds a leasehold interest in the largest asset of the Debtor's estate, was allowed to intervene as an appellee. This Court affirmed the Bankruptcy Court's confirmation order, although it did so without reaching the merits of any of the issues raised by ADECA. Instead, the Court concluded that "the issues raised in this appeal were not first presented to the Bankruptcy Court" and therefore "have been waived and shall not be addressed on appeal." Doc. 25 at 9. The Eleventh Circuit reversed and held, as a matter of first

impression, that an impaired creditor need not raise an objection before the bankruptcy court to preserve for appeal the violation of bankruptcy's absolute priority rule. Therefore, this Court has been directed to determine "whether the Plan violates the absolute priority rule." *In re Lett*, 634 F3d 1216, 1230 (11th Cir. 2011).

**Factual Background**

The relevant facts, which are now well-established, are taken directly from the Eleventh Circuit's opinion:

> Lett is a practicing physician in Selma, Alabama. As a result of a default on a United States Department of Housing and Urban Development loan, Creditor ADECA held a judgment lien against Lett in an amount in excess of $3 million. Intervenor Ball Healthcare–Dallas, LLC ("Ball") holds a leasehold interest in the largest asset of Lett's estate, a nursing home located in Selma. After Lett filed a voluntary Chapter 11 petition on March 26, 2004, ADECA filed a proof of claim in the amount of $3,012,060.34 based on its judgment lien. As indicated by Lett in the bankruptcy proceedings, he filed the petition to reorganize and to handle adequately his creditors, particularly ADECA
>
> On November 4, 2004, Lett filed his first proposed plan of reorganization, which divided ADECA's claim into secured and unsecured claims. Class 7 contained the secured portion of ADECA's claim. For that class Lett proposed to "pay ADECA a total of $3,500.00 in 2 annual installments of $1,750.00 due on the anniversary date of the confirmation order." The amount of $3,500 was based on the purported value of Lett's unencumbered property, a value ADECA contested throughout the proceedings. The remainder of ADECA's multi-million dollar claim was treated as a general unsecured claim and grouped together with all other such claims in Class 8. ADECA's unsecured claim, the largest in Class 8, was scheduled to be paid at one percent in three annual installments, beginning one year from confirmation. On December 21, 2004, the bankruptcy administrator filed a brief objection to the plan, stating that it could not be approved because its schedule of payments "violate[ ] the absolute priority rule of 11 U.S.C. Sec 1129."
>
> Undeterred, Lett filed an amended plan of reorganization, increasing the secured portion of ADECA's claim to $4,794 based on a revised valuation of the relevant property. Again, the bankruptcy administrator objected on the ground that the amended plan violated the absolute priority rule. There is no indication in the record that the administrator so objected at the request of ADECA, or that ADECA objected to the plan on the specific ground that it violated the absolute priority rule.

2

Lett filed a second amended plan on October 12, 2007, and, finally, a third amended plan on November 16, 2007—the plan now at issue (the "Plan"). As to the secured portion of ADECA's claim, the Plan placed it in Class 7 and proposed to pay $235,615 in installments of $12,616 beginning roughly five years after confirmation. This increase in ADECA's secured claim was the result of yet another revaluation of Lett's unencumbered property. The Plan then separated ADECA's unsecured claim—the difference between the total owed and the Class 7 secured claim—from all other general unsecured claims and placed it alone in Class 8. Of the greater than $2 million value of ADECA's unsecured claim, the plan would pay roughly $20,000, or one percent, in two annual installments after payment of all secured claims. All other unsecured claims, in Class 9, were scheduled to be paid at one percent of their value in one installment six months after confirmation. Finally, the Plan stated that "[e]xcept as otherwise provided in any provision of this Plan, on the Effective Date all property of the Estate shall revest in the Reorganized Debtor, all free and clear of all claims, liens, encumbrances and other interests of creditors."

Lett distributed ballots to impaired creditors for the purpose of seeking acceptance of the Plan in accordance with § 1129(a)(8). ADECA voted to reject the Plan and submitted a written response. Pursuant to § 1128, the bankruptcy court held a confirmation hearing on January 9, 2008. Of particular relevance to this appeal are statements made by the bankruptcy judge and counsel for Lett—and those not made by counsel for ADECA—at this hearing.

The confirmation hearing began with a recitation of the results of the balloting for the Plan. Collins Pettaway, Jr., counsel for Lett, informed the court that although ADECA had voted to reject the Plan, at least one impaired class of creditors had voted to accept the Plan. Thus, the court remarked to Pettaway, "The good news is you have an accepting vote of a class, and that gets you to confirmation, because you have to have one impaired class accepting, which you have." In the same exchange, the court explained, "That means with [Lett] having rejecting classes, we have to proceed under 1129(b) as to those rejecting classes. You have to prove ... that you meet ... the 1129(a) standards and the (b) standards as to the rejecting classes, Mr. Pettaway." Later in the proceeding, the court required Pettaway to proffer evidence that the Plan complied with the cram down provisions of Chapter 11, specifically whether the Plan met the requirements of § 1129(b) "as to ADECA and the other non-votes or rejecting votes."

Pettaway obliged, stating that "[Lett] will proffer that the Plan complies with all of the applicable provisions of Section 1129 and, also, he would proffer that all applicable provisions of the title have been met.". . .

"And that [Lett] would also proffer that as it relates to all Creditors that may not have voted or may not have accepted the Plan, that the Plan is fair and equitable to all classes, and that there is no unfair discrimination to either of them to meet the requirements of Section 1129(b)."

> Following Pettaway's proffer, Lett testified under oath that "everything Mr. Pettaway said" was correct.
>
> In light of this confirmation hearing, the bankruptcy court approved the Plan, entering a two-page confirmation order on January 14, 2008. In that order, the court noted that "Dr. Lett, through a proffer, testified that the plan met all of the requirements of 11 U.S.C. § 1129(a) and (b)," and stated that it "concludes and finds that the objections of ADECA are due to be overruled and the plan meets th[e] necessary requirements of § 1129."
>
> On February 12, 2008, the bankruptcy court issued a "Memorandum Opinion and Amended Order Confirming Debtors Plan of Reorganization." The court announced that "in considering the Plan [the court] found that the Plan complied with all necessary requirements under all applicable provisions, to wit: ... the debtor ... met the absolute priority requirements embodied in § 1129(b)(2)."

*Id.* at 1221-24 (footnotes omitted).

**The Absolute Priority Rule**

Because the sole issue to be resolved on remand is whether the Plan violates the absolute priority rule set forth in 11 U.S.C. § 1129(b)(2)(B), it is necessary to understand that rule before proceeding. Simply put, the absolute priority rule requires that a dissenting class of unsecured creditors be paid in full before any junior class receives payment. *Id.* at 1219-20. The rule was developed to ensure that creditors who are getting less than full value are treated fairly. *Id.* at 1219. The process of approving a Chapter 11 plan over the dissent of a class of creditors is known as a "cram down." *Id.* A cram down cannot be approved unless it satisfies the absolute priority rule. [1] *Id.* Hence, if a class of unsecured creditors objects to a plan of reorganization

---

[1] The absolute priority rule is codified in 11 U.S.C. § 1129(b)(2)(B)(ii).

under Chapter 11, those creditors must be paid in full before any junior creditor may receive or retain any interest in the property of the estate; otherwise, the plan cannot be approved.[2]

**Issues Presented**

ADECA argues that the Plan violates the absolute priority rule on two fronts. First, it points to a group of unsecured junior creditors (designated as Class 9) who are to receive payment before ADECA. Next, ADECA asserts that the Debtor himself will be receiving or retaining an equity interest because the Plan provides that title to the property revests in him free and clear of all claims, liens, encumbrances and other interests of creditors. The Debtor himself does not address these substantive issues in his appellate brief. However, Ball, the intervenor, has filed an opposition brief addressing both these claims on the Debtor's behalf. As to the former claim, Ball counters that the class of unsecured claims in Class 9 is not actually junior to ADECA's unsecured claims in Class 8. As to the latter claim, Ball argues that Lett is not actually receiving any interest in the property or, alternatively, that Lett is entitled to an equity interest because he has added "new value" to pay for that interest.

**Standard of Review**

A district court functions as a court of appeals when reviewing a bankruptcy appeal. *In re Sublett*, 895 F.2d 1381, 1384 (11th Cir. 1990). The Bankruptcy Court's findings of fact will be upheld unless they are clearly erroneous. *Id.* Legal conclusions, however, are subject to *de novo* review. *Id.* The issue presented here—whether a reorganization plan violates the absolute priority rule—is a question of law. *In re Armstrong World Industries, Inc.*, 432 F.3d 507, 511 (3rd Cir. 2005).

---

[2] A more comprehensive explanation of the cram down provisions and the absolute priority rule can be found in the Eleventh Circuit's opinion. *Lett*, 632 F.3d 1218-20.

**Legal Analysis**

Under the absolute priority rule, it is quite clear "that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan." *Norwest Bank of Worthington v. Ahlers*, 485 U.S. 197, 202 (1988) (internal quotations and citation omitted). ADECA is a dissenting unsecured creditor whose claim will not be paid in full, and it has clearly identified two junior classes that will receive or retain property. The first is the class of remaining unsecured creditors whom the Debtor himself placed in a separate lower class than ADECA.[3] Ball's only response is to argue that there is, in fact, no difference between ADECA's unsecured claims and those of the remaining unsecured creditors. Since there is no difference, the argument goes, they other unsecured creditors are not actually a junior class. In other words, Ball (who has intervened on the Debtor's behalf) claims that the classes created by the Debtor and approved by the Bankruptcy Court should be ignored.[4] The Court rejects this argument and finds that the Debtor is bound by the Plan he created. That Plan violates the absolute priority rule because it proposes payment to a juniorclass of unsecured creditors before ADECA's unsecured claim is paid in full.

The Plan also violates the absolute priority rule because it provides that title to all property of the Estate shall revest in the Debtor. In other words, Lett will retain an ownership interest in the property. That interest is "junior to all creditors' claims including unsecured claims." *In re Tomlin*, 22 B.R. 876, 877 (Bankr. M.D. Ala. 1982). As the Supreme Court made clear in *Ahlers*, "[t]here is little doubt that a reorganization plan in which [a debtor] retain[s] an

---

[3] Debtor separated ADECA's unsecured debt from other unsecured debt and placed ADECA in Class 8 and the remaining unsecured creditors in Class 9.

[4] Ball has submitted no legal authority to support its position, and the Court has been able to find any case law that addresses this novel theory.

equity interest in the [property] is contrary to the absolute priority rule." *Ahlers*, 485 U.S. at 202. Ball argues that Lett does not actually retain an equity interest because the "the entire value of the Debtor's assets are being paid out to secured creditors, and the property revests subject to. . . certain security interests." Intervenor's Brf., Doc. 23., at 14. Ball does not explain *why* these circumstances mean that no equity interest remains and cites no legal authority that would shed light on this argument. It could be interpreted to mean that the Debtor retains nothing of value due to the lack of value remaining in the property. That argument, however, has been squarely rejected by the Supreme Court. "Even where debts far exceed the current value of assets, a debtor who retains his equity interest in the enterprise retains 'property.'" *Ahlers*, 485 U.S. at 207-08.

Alternatively, Ball argues that Lett was entitled to retain an equity interest in the property under the "new value" exception to the absolute priority rule. Developed in the context of corporate reorganization, this exception allows old equity owners of a Chapter 11 debtor to retain an equity interest if they contribute new value or fresh capital to the reorganized debtor.[5] *In re Ambanc La Mesa Ltd. Partnership*, 115 F.3d 650, 654-55 (9th Cir. 1997). At a minimum, the new value exception requires that "the contributions be substantial, necessary to the success of the reorganization, and equal to or exceeding the value of the retained interest in the estate." *Unruh v. Rushville State Bank*, 987 F.2d 1506, 1510 (10th Cir. 1993). Further, the contributions must be in the form of money or money's worth and must be made "up front." *In re Snyder*, 967 F.2d 1126, 1131 (7th Cir. 1992). A debtor has the burden of satisfying the court that the requirements for the new value exception are met. *In re Anderson,* 913 F.2d 530 (8th Cir. 1990).

---

[5] Whether this exception survived the adoption of the 1978 Bankruptcy Code is the matter of some debate. John D. Ayer, *Rethinking Absolute Priority After Ahlers*, 87 Michigan Law Rev. 963, 1007-16 (1989).

Ball's brief does nothing more than invoke the exception and list the requirements. Clearly, Lett has contributed no new value to the estate.

**Conclusion**

The Chapter 11 Plan at issue in this case violated the absolute priority rule by permitting payment to a junior class of unsecured creditors and by permitting the Debtor to retain title to property. Consequently, the order of the Bankruptcy Court confirming the Plan is hereby **VACATED** and **REVERSED**. This matter is **REMANDED** to the Bankruptcy Court for further action.

**DONE** and **ORDERED** this the 13th day of June, 2011.

s/*Charles R. Butler, Jr.*
**Senior United States District Judge**